Mr. Patton. May it please the Court. Good morning, Your Honors. I represent the property owners in this case, and the case is on appeal from a dismissal from the Court of Claims. The chief basis of that dismissal was the Court's belief that it lacked jurisdiction to adjudicate the claims alleged because there had been no invasion of the plaintiff's property rights. There's no claim here to ownership of the bed at the Slough, right? Of the bed? Of the Slough. No, no. My clients do not claim ownership to the water that is owned by the state in trust. Where did the bed of the Slough? They don't claim that either, right? The bed of the Slough, no sir. We do not claim that. That again belongs to the state of California, in trust for the people of the state of California. What we claim though, and what is recognized as a property right, is the right of access to and from the navigational waters of the Slough from every portion of the shoreline. Are you claiming a regulatory taking? No, sir. We are claiming that this is a physical taking. I thought you were alternatively claiming that it was a regulatory taking. We believe that it was a physical taking. We certainly argue in the alternative, if there was a regulatory taking, it is still a compensable taking. But our principle position throughout this case has been that this is a physical deprivation, a physical invasion of those rights. You argue in the alternative, but is there anything in the complaint where you've pled a regulatory taking? I don't believe it specifically alleges either way. It seemed to me, reading the complaint, that you were alleging only a physical taking. That is our belief, that it is a physical taking. Mr. Patton, I understand this is a somewhat complex area, but I think of a physical taking as occupation that deprives you of all uses and all enjoyment of the property. And a regulatory taking is one that may amend some of your uses because of government intervention, some of your enjoyment. Clearly, this would fall in that latter category, wouldn't it? The question of whether a taking is a physical taking or a regulatory taking does not depend upon whether all of the property is taken or a portion of the property is taken. You look at the Loretto case, which is a physical, the Supreme Court said, they put a wire on a building. But just discuss that case with another group yesterday. At least for the property impacted by that wire, it is completely taken. And maybe the damages are quite small as to the amount of property that was completely taken. But here, there is nothing completely taken except the ability to launch a boat on 60% of the waterfront. He still has the right to launch a boat elsewhere. He didn't even use the boat launching completely. It is just a small portion. But whether or not there is a physical taking is not dependent upon whether it is 60% or 80%. What did they take? They took the right to access navigational water. No, but that is taking a use of, it isn't taking the property. It is taking a partial use right. But if you read the Casitas case, the Casitas case or the Hague case, they mentioned that with water rights, of course, nobody owns the water. There is no private ownership of water. And that depends upon riparian or appropriation rights. It depends upon where you are. The court did say that the water was owned, right? In Casitas, the court based its decision on the fact that the water was owned. They had rights in the water. They did not actually own the water. They had the rights, and the rights are the right to use water. That is what water rights really are. It is the right to use. We lost the right to use the waters from every point along the shoreline. Is the riparian right or the literal right here transferable separately from the property itself? It would be. It would be? I believe that CR, that my clients would have the right if they wanted to lease that or to convey a portion of Separate from the property? What California case suggests that? I cannot tell you, Your Honor. But I believe there is nothing that would prohibit them from doing that, from transferring that right. It is just like any other right that a property owner has. Those rights are transferable and alienable unless there is some specific restriction. And in this case, the right that is key is not just the right from one point on that property to get into the water and use it and to have navigational access. It is the right to do so on every bit of the shoreline. It is clear from California law. California law is not really different from most states, most jurisdictions. That right exists from every point on the property. And so the question whether there is a physical taking or a regulatory taking doesn't depend on whether it was every part of the property that was taken. What does it depend on? Wait a moment. Doesn't the theory that you are espousing turn every regulatory taking into a physical taking? Not at all, Your Honor. What the analysis is, is what the character of the taking is. And the character of the taking didn't happen by some regulation that was issued by the government that said you cannot use the slough anymore effective on this state. It didn't happen by the denial of some permit. Those are the typical regulatory taking circumstances. It happened by a physical act. It happened just the same way that it happened in Gurlock, for instance, versus the United States. The Gurlock case, they built a dam across the water. That was a physical taking. That obstructed the rancher from his water rights, his right to use that water. He didn't own the water. He had the right to use it. And that's just exactly what happened here. They put up a law boom for the very purpose of preventing that marine access, and that's what they took from us. That is a physical taking. It's the character of the right, the character of the taking, not where it's located, whether it's on your property or not, because all those cases, Gurlock and numerous cases where there's been water rights taken, almost all of them occur off of the boundary line of the property. So it's not where it happens. It's the character of the taking. And here it was a physical obstruction, a physical invasion of that property right. Didn't you have notice in 1999 sufficient to have an accrual of the statute of limitations at that point? Absolutely not, Your Honor. We had no notice whatsoever until later on around 2002, my client learned that there was the potential that this was going to happen to the property. And when we get to the statute of limitations, we filed within the six years. First off, we filed what was considered prematurely by the government itself. And this is another reason why I think that we have a physical taking. Even the government believed that the taking had not occurred when we filed CRB 1, the original lawsuit in 2003 within any six-year statute of limitations. But the government argues on the regulatory taking point that if there was a regulatory taking, it occurred before you acquired the property, and that that means that you don't have a right to sue. That's what they argue. You don't respond to that in your reply brief. Is there any response to it? Yes, there is a response to it. The government itself did not believe that at the time of the events because the government filed papers seeking to dismiss the case back then and ask for a stipulation. Let's assume that we conclude that the regulatory action, if it was a regulatory taking, the regulatory action occurred before your clients acquired the property. Does that mean that they lose? If the regulatory taking occurred and it occurred before my clients acquired the property, there would be a standing issue. I agree, you'd lose. But there is not, it's not a regulatory taking. And I think, again, the government itself didn't believe a taking had occurred because it filed papers with the court saying this case is not yet right because there has been no entry to the plaintiff. He can still get the boats to and from any portion of his property, which was true. And we had discussions with the government, and we agreed that the case would be dismissed without prejudice because it wasn't right. It would be refiled again. All of this is in the record. It would be refiled again when the taking actually occurred. And that's exactly what happened. So the government itself believed that the taking didn't happen until it put its log wound across and destroyed that right. Which case do you think supports best your claim that this is a physical taking? I think you could look at John R. Sand. You could look at the Tulare Lake Basin case, the estate of Hague. The U.S. versus 50-foot right-of-way, that was a case, a Federal Circuit case, in which they put a pipeline across the bottom of the water. And one of the specific components of compensation that this court decided was that the access from the shoreline into the navigable waters had been interfered with. And that case was a physical taking case. There are almost no cases that I think this fits in as a regulatory taking case. I don't know of a case, and I didn't see one cited in the government's brief, that indicates that this was regulatory taking. This wasn't something that was done, you know, by government or license. In those cases, though, the water is actually taken away. They are completely deprived of its use. It is gone. And they had its use before as part of their property rights. So a portion of their property was completely invaded and expropriated. That's not here. Actually, in the Casitas case... Yeah, the water is taken away for a fish ladder. And they can never use it again. The water that was theirs is no longer theirs. Some of the water was still theirs. There was other water there, but the water that they had a right to before was now completely taken away. So there was a compensation issue for physical... But that's not here. Yes, it is. Why? It is exactly here because we had a right... The water is still there. The only thing is you can only put your boat here. You can't put your boat down here. We can't use that water. We cannot use the water, which is what the right of access is. You can use it in... If you had cattle, they can still go down and drink. If you... But we don't have a right of navigation anymore. Wow. That's different from taking away the entire water, isn't it? So you have no use of it whatsoever. You have lost only a portion of its use. We've lost part of our bundle of sticks, our bundle of rights. Our bundle of rights are not only to use the water for cattle. Our rights include a specific right... Yes, you've lost one use of the water. You didn't lose the water, though, as they did in Casitas. And in Casitas, they didn't lose the right of navigation, maybe. I know, but they lost the water. They didn't take any water away from you. They just took away... It's one way in which you can use it. But the only way that water rights have any meaning is how you can use them. And if you were a rancher, you'd have no complaints because your cattle could still drink at that water. That would be true. We would not be here on that basis. But we're not a rancher. We are a property owner. And one of our rights, just like it was in... Remember, this has got to be a taking. It's got to deprive the entire... It's got to take the property away from you. But it does not have to take all of the water rights away. That's one of the things that Casitas says. It says that the government has... Yes, a restriction can be a regulatory taking. I agree. It says any part of the plaintiff's water rights that are invaded amounts to an interference with those rights and a compensable taking it. Page 1292 of Casitas, that's what it holds. So it matters not that we have the right to bring cattle down there and drink from water that supposedly is in this polluted saloon. If this case involved an administrative order barring the use of the slough for navigation, would that be a regulatory taking? I'm not clear whether it does. What I do know is that if you look at... Let me find it in the record. If you look at the photographs on page 409 and 410 of the record, you'll see a sign at the beginning of the slough where the log booms, and it says, danger, no entry. I don't know what the ramifications would be of a boat or somebody that tried to get in there. But what I do know is it's of no value to the owner. But I'm trying to get an answer to my question. If this restriction had been imposed by violation of a regulatory order, would that be a physical taking or a regulatory taking in your view? If there was no log boom, it might possibly. It would be certainly a grayer area. It would be more difficult to determine. I can't say that it would be one as opposed to the other. But in this case, nothing happened that prevented our use of the slough for maritime access until that log boom went across. And that was a physical action. Let's hear from the government, Mr. Patton. Thank you. And we'll restore your three minutes. Would you give Mr. Avila an additional three minutes if he needs to use it? And our time will be even. Thank you very much, Your Honor. Aaron Avila on behalf of the defendant in the United States with me at counsel's table is Lori Williams from the United States Environmental Protection Agency. As the court's questions kind of illustrate, there is no physical invasion of plaintiff's property in this case. And for that reason alone, the physical taking claim was properly dismissed. They only raised in their complaint, I read the complaint just like Judge Lynn does, only a red alleged physical takings claim. Their response to discovery interrogatories made that also clear, and I think their brief on appeal makes it clear as well. It was only the CFC, who in abundance of caution, I think, went the extra mile and addressed the possibility of a regulatory taking claim. So there's no physical invasion of the property. Plaintiffs have identified no case where a restriction on a use that doesn't physically invade the property amounts to a physical taking. And that, again, disposes of this case. And even as a threshold matter, the plaintiffs here have no private right to navigate the slough. That is a public right held under a public trust doctrine by the State of California. So they're treated the same way as the public is with respect to navigation from the slough to the Stockton Deepwater Channel. I also do think, as Judge Dyke's questions suggested, their argument does, as far as I can tell, get pretty close to turning every regulatory taking into a physical taking because the premise seems to be if a use is prohibited, that's a physical taking. And it just cannot be that the fact that there's a physical, a log boom on someone else's property or in the public navigational area, that that somehow transfers this into a physical taking. Can the riparian literal rights be transferred separately under California law? I don't know of any case that addresses that, but the premise seems to be that a person who has property has at least some access to the water. So, I mean, it may be that you can transfer your right to use that, but the notion that you could somehow sever that from the land seems kind of contrary to the basis of to the extent the state even recognizes a private right of access. It would seem to be tied to the fact that your water abuts the water body. And here, the water body continues to abut all portions of the property. One other thing, you know, I wanted to, you asked... What about Kohlberg? That talks about the riparian rights of the landowner. Right, and it talks about the right of navigation as a public right, not a private right. It talks about a right of access. Here, they continue to have access to the slough at all points across the foreshore. And I don't think Marks, which they rely on, changes that at all. What Marks was addressing was the situation whether someone has access to... But their access has been at least curtailed. Why isn't the right of access, which Kohlberg discusses, a right which would give rise to a physical taking? Well, because, first of all, it's a right of access to the shore, and that hasn't been invaded here at all. There's nothing on that portion of the property that physically invades. But I think more fundamentally, Kohlberg doesn't stand for the proposition that you have a right to access, then to navigate, from every point of your property touching water, and then from there out to the Stockton Deepwater Channel in this case. And in fact, they still have the ability to bring large barges to what has been called the notch area, and it's shown on the map that's included with our brief. From there, into the Stockton Deepwater Channel, up the San Joaquin River, to the San Francisco Bay. But you seem to be arguing that they didn't suffer any deprivation of use, and it seems to me that they did. It's not a deprivation of all use, but it's a restriction on what they could use their property for. I think as a threshold matter, I think it's very questionable whether they have that unfettered use right under California law, but even if they did, it was only partially impeded, and they still have navigational access and the access to all the water. I also want to say, there is a regulatory act here. If they wanted to bring a regulatory takings claim, it was the record of decision that announced the remedy, that there would be a sand cap in institutional controls. And this court has, in the Goodridge case... Yeah, but that institutional controls language certainly doesn't give you notice that they're going to throw a log boom across there and fill most of the slough with logs, right? They did fill the slough with logs. First of all, all there is is a boom that prevents access across part of the opening of the slough, and then the sand cap is about two feet thick on the bottom of the slough. So there aren't logs throughout. It's simply a barrier with a sign on it that says, don't enter. Well, but still, you don't have in the word institutional controls notice that they're going to erect an impenetrable barrier. Well, in fact, the record in this case, the draft sediment and surface water remedy, which is available for public comment, had the location of the log boom in it.  Yes. And so that also, I mean, for a regulatory taking, the critical thing is that the United States announced that there would be limitations on navigation in the slough, and that was more than sufficient for a regulatory taking to claim to accrue under this court's decisions in Goodridge. Did you argue this in the first litigation? I'm sorry? Did you argue this in the first litigation? Which? The first litigation when you were saying it's not right. Well, what we said was, and let me get the exact language here. I think what we said was to the extent they allege. And the other thing I'd like to see is whether the 1999 ROD specifies log boom. Can you show me that in the record? But you've got two things. The first thing is what we said in the first litigation was that to the extent their claim is based on a physical invasion, it had not accrued yet. We didn't say anything about whether a regulatory taking had accrued. And as the argument today in the complaint makes clear, what they had brought is a physical taking claim, and we haven't taken a contrary position at all as to when the physical taking claim accrued. Did the first complaint in your case include both a regulatory taking claim and a physical taking claim? I think it also just alleged a physical taking claim. And it seems to me that that's kind of, and at the very least that's what this case has been about. You're not arguing the statute of limitations with respect to a physical taking claim. Correct. Especially given the footnote in John R. Sandin's grapple with this court's decision. Show me the ROD that specifies log boom. I'm sorry. The location of log boom was not in the record decision. I apologize, Your Honor. I didn't think so. What it talked about was institutional controls and the record decision. Institutional controls is, again, back to my point. Hardly notice that you're going to erect a log boom. But the record decision also, I mean, part of the administrative record that supported the record decision and that was available for public comment was the draft and final sediment and surface water feasibility study. And that did include a map with the location of the log boom. When was that? That was in, I think it was July of 98 was the draft, and January of 99 was the final. And those were available for public comment. So I'm confused. I'm sorry. So this January 99 thing shows the log boom. Right. Right? Right. And does the March 31st ROD refer to the January 99 thing? I think it's definitely part of the administrative record supporting the record decision, the ROD. Whether there's a specific reference, I can't remember, in the citations at the end of the ROD. I mean, that wouldn't be typical. Where's the ROD in the record? It's 775 to 838, I think, Your Honor. The Court of Federal Claims said the ROD does not specifically mention a log boom. I was basing myself on the trial judge's own estimation. He looked and he couldn't find the log boom in the ROD. But, again, she pointed out that there were numerous other publicly available documents that are specifically in the record that support that record of decision. And I would note that I think also the CMC judge also thoroughly explains why that public information was readily available. Anyway, I think one important point here is, you know, the option agreement for plaintiff CRB Enterprises, they entered into that option agreement after the record of decision, after all the draft and final surface water feasibility studies. And then it entered into an option agreement that specifically references the sediment, the contaminated sediment in the sluice. So I think the notion that they didn't have notice of this is impossible to believe, and at the very least doesn't meet the standard in Ingram that it was concealed or inherently unknowable. But even putting all that aside. But that's a standard which has to do with the running of the statute of limitations. There's this alternative argument that the regulatory action took place before they acquired the property. And their notice under those circumstances would seem to be irrelevant, no? Well, that was going to be my next point. Irrespective of this, it was conceded today they don't have standing. They did own the property at the time of the regulatory act. And this court has found in Goodrich that records of decision start the statute of limitations period. Regulatory takings claim accrues with the issuance of the record of decision. When was the boom erupted? 2006. If this is a physical taking, they're well within the statute of limitations. Again, we haven't raised that argument as to a physical taking. My understanding is that with respect to the various feasibility study documents that refer to a log boom, that those study reports contain all sorts of options, that it's not clear that that's the only solution or that's the only way to address this concern. So in that respect, why would that put someone on notice? Even assuming that those study reports somehow attach to the ROD, why would that put somebody on notice of the blockage of egress to the SLU when those reports provide all kinds of other options? What I meant to say was the record of decision selects one of those options, so that is when the claim accrues. And to the extent the record of decision, to the extent the claims are claiming that because the record of decision didn't spell out exactly where the log boom was in the four corners of that document, the alternative that it selected was discussed in detail in the draft and final feasibility studies, which did lay out the detail. So I'm not claiming that those feasibility studies, their claim accrued at that point. It was the record of decision as informed by the voluminous administrative record that supported it, including those draft and final studies. Just for curiosity, how do they anchor the boom? Is it anchored on his property? It is not anchored on his property. Okay. They're pilings driven into the floor. Right. And those are not inside of his property line. Unless the court has any other questions? No. Thank you very much, Your Honor. Mr. Batten, you have your three minutes. Yes, Your Honor. I wanted to address a couple of things. First off, in a case that we cited on page 13 of our reply brief, it's clear that under California law, the state may not interfere with navigable waters without payment of just compensation, except under the public trust. So the argument that we don't have a compensable right in navigation is not true. That is the City of Los Angeles v. Aiken case, 10 Cal, second at page 470. So there is authority that we do have a compensable right to this navigation. The second point that was raised was, again, they said we don't own the slough. We didn't have property that was taken. Property rights include a lot more than just physical piece of property. They include the rights to do things with your property and the rights of use. Included among those rights are this right of maritime access that is recognized in almost every state. That was recognized, again, by this court in the 50-foot right-of-way case. It's been recognized in several other cases, including the Gerlach case. It doesn't have to be on your property to have a right of use of water. Almost every one of these water cases involved situations where the water was somewhere else, and that right of use is still a protectable right. It doesn't matter who owns the physical property where that water is located. I'd like to address also just briefly the issue on the statute of limitations. I think the proper case is the John R. Sand and Gravel case, and Goodrich is clearly simply a regulatory-taking case. The facts in Goodrich are so different from our case, which involves a physical deprivation. It was an actual physical invasion of our rights. We were using that slough to get barges into the property all the way up until they put that log boom in. Nothing in the ROD, nothing that was done before the ROD or after the ROD, interfered with our rights in any way until that log boom went in. I think the proper analysis is under the John R. Sand and Gravel case if the court is concerned about the statute of limitations. I believe it's a physical taking. I believe it's a compensable taking, and it's significant. It did not have to be every foot of our access. If it was any of it, it is a substantial right that's protected by the Constitution, and I believe in this instance the government is required to provide compensation. Thank you very much. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock. Thank you.